Filed 7/8/26  P. v. Valenzuela CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H053233 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 18CR004827) |
| v. | |
| MARK VALENZUELA, | |
| Defendant and Appellant. | |

Originally convicted by plea of the attempted murder of John Doe for the benefit of a criminal street gang, defendant Mark Valenzuela appeals from the resentencing judgment entered under Penal Code section 1172.6.[1]  After this court reversed the trial court's initial denial of resentencing for insufficient evidence of malice, the trial court on remand vacated the sole count of conviction and redesignated the offense as three consecutively sentenced target crimes—two counts of assault with a semiautomatic firearm (§ 245, subd. (b)) against John Doe and a second victim, respectively, and one count of active participation in a criminal street gang (§ 186.22, subd. (a)), selecting the upper term for one assault offense based on aggravating factors not found true by a jury or admitted by Valenzuela.  On appeal, the parties agree that the trial court erred by imposing an upper term sentence without holding a jury trial on the aggravating factors

---

[1] Unspecified statutory references are to the Penal Code.

and in failing to retroactively apply Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill No. 333), which narrowed the definition of a criminal street gang under section 186.22. Valenzuela's remaining claims are that the trial court lacked discretion to redesignate his sole count of conviction as multiple target offenses. We agree with the Second District's decision in *People v. Lara* (2025) 108 Cal.App.5th 1005 (*Lara*), which applied the California Supreme Court's guidance in *People v. Arellano* (2024) 16 Cal.5th 457 (*Arellano*), in concluding that the trial court erred by resurrecting counts dismissed in the parties' plea agreement on resentencing. We reverse the judgment and remand the matter for resentencing.

## I. BACKGROUND

### A. *Valenzuela's Plea and Section 1172.6 Petition*

In 2018, the Monterey County District Attorney charged Valenzuela and his codefendant Miguel Jimenez in connection with a 2018 shooting with two counts of willful, deliberate, and premediated attempted murder (§§ 664, 187, subd. (a); counts 1 and 2), two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 3 and 4), street terrorism (§ 186.22, subd. (a); count 5), and assault with a deadly weapon (§ 245, subd. (a)(1); count 6). The People further pleaded gang enhancements as to counts 1 through 4. Counts 1 and 3 were alleged to have been committed against John Doe, and counts 2, 4, and 6 were alleged to have been committed against Jane Doe.

By agreement with the People in August 2019, Valenzuela pleaded no contest to count 1, the attempted murder of John Doe, now amended to omit the premeditation allegation (§§ 187, subd. (a), 664) of John Doe and admitted that he committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)); the remaining five counts were dismissed on the People's motion in furtherance of justice. He was sentenced to a stipulated total term of 17 years in prison.

In 2022, Valenzuela petitioned for resentencing under recent amendments to what is now section 1172.6. (Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022 [expressly including

2

defendants convicted of attempted murder among those eligible for resentencing relief from conviction under since-abrogated imputed malice theories].) At the evidentiary hearing on Valenzuela's petition, John Doe testified that he was with his sister Jane Doe in front of his mother's house when two young men approached them, firing guns. According to John Doe, he pushed Jane Doe away when he realized the men were going to shoot them, and he heard seven gunshots. John Doe also tried to get Jane Doe out of the area. A parked car near where they had been standing showed bullet damage. Surveillance videos showed a car stop near the house, and two individuals walk out of the car toward the house where John and Jane Doe were standing. The two individuals then started firing their guns, and John and Jane Doe fled. Shortly after the shooting, officers were able to stop the suspect vehicle. Valenzuela was driving, and he was accompanied by two other men. At the preliminary hearing, a gang expert had testified that Valenzuela and one of the individuals in the car were members of the Norteño criminal street gang, and the parties stipulated that the Norteños were a criminal street gang.[2] The parties did not dispute that Valenzuela was not one of the two shooters.

The trial court denied Valenzuela's petition for resentencing, and Valenzuela appealed. On appeal, this court found insufficient evidence that Valenzuela possessed an intent to kill and reversed the trial court's order denying his petition for resentencing, remanding the matter to the trial court for further proceedings under section 1172.6, subdivision (e).

B. *Resentencing on Remand*

Following this court's remand, the parties submitted briefs on resentencing. Valenzuela argued that Assembly Bill No. 333, which became effective following his initial sentencing, applied to his case and rendered his original gang enhancement infirm.

---

[2] The parties agreed that the nonhearsay portions of the preliminary hearing would be considered at the evidentiary hearing.

Valenzuela further demanded a jury trial on any aggravating factors used for resentencing. And at the resentencing hearing, Valenzuela argued that the target offense of the underlying attempted murder was count 3, assault with a semiautomatic firearm on John Doe, and that the trial court did not have the authority to "search out and impose sentence allegations and enhancements that were not charged and proven at trial."

The trial court thereafter redesignated the attempted murder of John Doe into three target offenses: two counts of assault with a semiautomatic firearm (§ 245, subd. (b))—one as committed against John Doe and the second as to Jane Doe—and a count of active participation in a criminal street gang (§ 186.22, subd. (a)). Relying solely on Valenzuela's rap sheet, the trial court found true the aggravating factors that Valenzuela's convictions were numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)),[3] adding that the court "could find" based on the rap sheet that Valenzuela was also on probation at the time the offense was committed (rule 4.421(b)(4)).

The trial court sentenced Valenzuela to an upper term of nine years for the assault with a semiautomatic firearm on John Doe (count 3) and an additional five-year term for a gang enhancement under section 186.22, subdivision (b)(1)(C). As for the count of assault with a semiautomatic firearm Jane Doe (count 4), the trial court imposed a consecutive term of two years (one-third the middle term), and for the active participation in a criminal street gang conviction (count 5), the trial court imposed a consecutive term of eight months (one-third the middle term). In total, Valenzuela was sentenced to 16 years 8 months in prison. Valenzuela timely appealed.

---

[3] Undesignated rule references are to the California Rules of Court.

## II.  DISCUSSION

### A.  *The Gang Enhancement and the Gang Participation Offense*

The Attorney General concedes that Valenzuela's gang enhancement (§ 186.22, subd. (b)(1)) and his conviction for active participation in a criminal street gang (*id.*, subd. (a)) must be vacated because they are unsupported by the evidence.  We agree.

When the trial court granted Valenzuela's petition for resentencing under section 1172.6, his judgment became nonfinal and was subject to the retroactive application of Assembly Bill No. 333.  (*People v. Trent* (2025) 112 Cal.App.5th 251, 262–263 [once petition for resentencing under § 1172.6 is granted, judgment is no longer final]; *People v. Lopez* (2025) 17 Cal.5th 388, 393 [Assem. Bill No. 333 is retroactive to nonfinal judgments under *In re Estrada* (1965) 63 Cal.2d 740].)  Assembly Bill No. 333 made changes to the law on gang enhancements and "narrowed" the definition of a criminal street gang.  (*Lopez*, at pp. 395–396.)

Valenzuela admitted the gang enhancement as part of his plea agreement before the enactment of Assembly Bill No. 333.  His admission under former law does not satisfy the elements now required under current law, which narrowed the definition of what constitutes a criminal street gang.  And here, the sole evidence that Norteños constituted a criminal street gang was the parties' stipulation at the preliminary hearing that "Norteños are an ongoing street gang that engages in a pattern of criminal activity pursuant to [s]ection 186.22[, subd.] (f)."  No additional evidence about Norteños or any identifiable subset were presented at the evidentiary hearing.  This is insufficient under any standard to prove either the gang enhancement or the gang offense under current law. (See *People v. Silva* (2021) 72 Cal.App.5th 505, 526–527 (*Silva*).)  So we agree with the parties that the gang enhancement and conviction for active participation in a criminal street gang must be vacated.

**B.** *The Redesignation of the Attempted Murder Count*

Next, we examine whether the trial court exceeded the scope of its authority under section 1172.6, subdivision (e) by redesignating Valenzuela's single conviction of attempted murder of John Doe as multiple target offenses—not only assault with a semiautomatic firearm on John Doe and the gang participation charge but assault with a semiautomatic firearm on Jane Doe. Like the Second District in *Lara*, we are guided by the California Supreme Court's reasoning in *Arellano* that application of the trial court's resentencing discretion under section 1172.6, subdivision (e) here is circumscribed by the prosecution's exercise of charging discretion in the original proceeding. (*Arellano, supra*, 16 Cal.5th at p. 476 ["deem[ing] it unlikely the Legislature intended to allow the prosecution to effectively revisit its charging decisions … every time a petitioner succeeds in setting aside a … conviction under section 1172.6"]; *Lara, supra*, 108 Cal.App.5th at p. 1026.) Here, that limitation is the district attorney's election to dismiss all charges involving Jane Doe as well as the substantive gang count in return for Valenzuela's plea to a single count of attempted second degree murder of John Doe. (*Lara*, at p. 1026; *Arellano*, at p. 470.)

**1.** *Section 1172.6*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), amending sections 188 and 189 to eliminate imputed malice theories of murder (Stats. 2018. ch. 1015, §§ 2–3) to " ' "more equitably sentence offenders in accordance with their involvement in homicides." ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 986.) The new legislation gave retroactive effect to these amendments by permitting eligible defendants convicted of murder to petition the trial court for vacatur of their convictions and for resentencing. (Stats. 2018, ch. 1015, § 4; former § 1170.95.) Effective January 1, 2022, the Legislature expanded eligibility for resentencing to those who were convicted of attempted murder by plea. (Stats. 2021,

ch. 551, § 2.)  Valenzuela petitioned for resentencing and after this court found that the trial court erred in denying his petition, the trial court vacated his conviction.

A successful petitioner (like Valenzuela) who is "charged with [attempted] murder 'generically, and the target offense was not charged' is entitled to have the [attempted] murder conviction 'redesignated' as 'the target offense' of the natural and probable consequences theory—or the 'underlying felony' of the felony murder—and to be resentenced accordingly." (*Arellano*, *supra*, 16 Cal.5th at p. 464; § 1172.6, subd. (e) ["[t]he petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged"].)  Section 1172.6 does not define what constitutes an "underlying felony" or "target offense," but our high court in *Arellano* held that the "meaning of these terms is clear"—an " 'underlying felony' refers to the felony underlying a felony-murder theory [citations], and the 'target offense' refers to the offense the natural and probable consequence of which was murder [citations]." (*Arellano*, at p. 470.)

There is no dispute that there is no qualifying felony for which the prosecutor could have proceeded under a theory of felony murder in this case.[4]  Thus when resentencing Valenzuela, the trial court was required to redesignate his offense as a "target offense"—the offense of which the natural and probable consequence was the attempted murder.  (*Arellano*, *supra*, 16 Cal.5th at p. 470.)

### 2.    *Analysis*

The parties agree that Valenzuela's conviction for attempted murder of John Doe was properly redesignated as assault with a semiautomatic firearm on John Doe.  The

---

[4] Felony murder liability arises when a death occurs during the commission of certain enumerated felonies, including "arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under [s]ection 206, 286, 287, 288, or 289, or former [s]ection 288a."  (§ 189, subds. (a) & (e).)

7

remaining question is whether the trial court exceeded its authority under section 1172.6, subdivision (e) by *also* redesignating an additional felony—assault with a semiautomatic firearm on Jane Doe.  We conclude that the trial court erred by resurrecting counts stemming from conduct that the district attorney plainly chose to dismiss as part of the negotiated settlement.  These dismissed counts cannot form the "predicate for relief" for Valenzuela's petition for resentencing.  (*Arellano*, *supra*, 16 Cal.5th at p. 475.)  And as in *Lara*, because Valenzuela "did not plead to any other offenses" than the attempted murder of John Doe, "[t]he target offense underlying the attempted murder of one named person is not two assaults with a firearm on two persons."  (*Lara*, *supra*, 108 Cal.App.5th at p. 1027.)

Before *Arellano*, other appellate courts had considered the scope of a trial court's discretion in redesignating convictions as underlying felonies or target offenses under section 1172.6, subdivision (e).  In *People v. Watson* (2021) 64 Cal.App.5th 474, the Court of Appeal held that section 1172.6, subdivision (e) does not preclude a trial court from redesignating the single count to which the defendant had pleaded guilty as two underlying felonies.  (*Watson*, at p. 485.)  Citing the need to "calibrate[] [the defendant's] punishment to his culpability for committing both" underlying felonies, the *Watson* court inferred that the Legislature in drafting section 1172.6 intended "to grant trial courts flexibility in designating the underlying offense for resentencing purposes."  (*Watson*, at pp. 492, 488.)  *Watson* reasoned that the Legislature's use of the singular " 'underlying felony' " is nonetheless "susceptible of either singular or plural meaning depending on context."  (*Id*. at p. 485 [citing § 7's provision that " 'the singular number includes the plural, and the plural the singular' "].)  *Watson* thus affirmed the trial court's redesignation of the defendant's murder conviction as "both first degree burglary and first degree robbery" because the evidence "establish[ed] beyond dispute that [the defendant] aided and abetted both a burglary and a robbery" before the killing.  (*Id*. at p. 492.)

In *Silva*, *supra*, 72 Cal.App.5th 505, the Court of Appeal interpreted section 1172.6 to permit redesignation of two counts of first degree murder as *five* home-invasion robberies in concert and one attempted robbery corresponding to multiple surviving victims. (*Id*. at p. 531.) *Silva* concluded that redesignation of multiple target offenses in lieu of one murder was appropriate, as section 1172.6 invests the superior court with "considerable discretion" in redesignating murder convictions based on a person's individual culpability. (*Silva*, at p. 532.) *Silva* held that the resentencing court "may consider the full extent of the petitioner's criminal conduct, and the redesignation may reflect, among other things, the number of crime victims, not just the number of murder charges on which the petitioner was convicted." (*Ibid*.)[5]

But *Watson* and *Silva* were both decided before the California Supreme Court's decision in *Arellano*, *supra*, 16 Cal.5th 457. In *Arellano*, the California Supreme Court considered whether the trial court could redesignate an underlying felony or target offense *and* impose a sentence enhancement—in *Arellano*, the enhancement at issue was a firearm enhancement that had not been charged or found true in the prior proceedings; in fact, the enhancement had been stricken as part of the plea agreement. (*Id*. at pp. 463–464, 469.) Ultimately, *Arellano* held that "[c]ourts may not impose uncharged and unproven sentence allegations or enhancements when resentencing a successful petitioner under section 1172.6, subdivision (e)." (*Id*. at p. 477.) In its decision, *Arellano* acknowledged *Watson* and *Silva* but expressly declined to consider whether it was appropriate for a trial court to designate multiple underlying felonies or target offenses. (*Arellano*, at p. 474.)

---

[5] *Silva* further held that due process requires that a defendant be notified "reasonably in advance of the court resentencing him, which crimes the prosecution sought to have redesignated as underlying felonies, the length of sentence the prosecution proposed, and how that recommended sentence was calculated." (*Silva*, *supra*, 72 Cal.App.5th at p. 523.)

*Arellano* reasoned that "even assuming [trial] courts must have 'flexibility' [citations] and 'discretion' " in resentencing under section 1172.6, subdivision (e), "it does not follow that courts have the separate authority to search out and impose sentence allegations and enhancements that were not *charged and proven* at trial." (*Arellano*, *supra*, 16 Cal.5th at p. 474, italics added.) And that it seemed "unlikely the Legislature intended to allow the prosecution to effectively revisit its charging decisions for the entire range of offense-specific sentencing allegations and enhancements every time a petitioner succeeds in setting aside a murder conviction under section 1172.6." (*Id*. at p. 476.) *Arellano* concluded that permitting the imposition of uncharged and unproven sentencing enhancements would "more closely resemble a new prosecution, not a resentencing proceeding" and that it was doubtful that the Legislature intended to "reopen the prosecution's charging decisions to this extent." (*Id*. at p. 475.) *Arellano* expressed skepticism that the Legislature intended "without any warning or suggested procedures, to burden superior courts with this degree of factfinding in section 1172.6 resentencing proceedings." (*Id*. at p. 476.)

Following *Arellano*, the Second District Court of Appeal in *Lara*, *supra*, 108 Cal.App.5th 1005 recently concluded that the trial court could not redesignate one conviction of attempted murder as three counts of assault with a firearm. (*Id*. at p. 1022.) *Lara* held that under *Arellano*, "the target offense or underlying felony for purposes of section 1172.6, subdivision (e) is not any felony that could have been established by the evidence; it is the offense or felony that was the basis of the prosecution's theory of murder in the trial court." (*Lara*, at p. 1026.) And nothing in the statute "contemplates the trial court convicting a petitioner of an offense that was not previously litigated or relied on as the basis for one of the offenses that has been vacated. If the Legislature had wanted the prosecutor or the redesignating court to be able to scour the record for charges that could have been brought and litigated but were not, it would have said so." (*Ibid*.)

In the case before the *Lara* court, the defendant pleaded no contest to "two counts of attempted murder of two designated individuals" and did not plead to any other offense. (*Lara*, *supra*, 108 Cal.App.5th at p. 1027.) Applying *Arellano*, the Second District held that in *Lara*'s case, the "[t]he target offense underlying the attempted murder of one named person is not two assaults with a firearm on two persons." (*Ibid*.) Therefore, *Lara* held that the trial court lacked the authority to make factual findings and impose convictions for two *additional* counts of assault with a firearm—there had been no trial, and the defendant's plea did not encompass an admission that there were more than two victims of the crimes. (*Ibid.*)

In accordance with *Arellano* and *Lara*, we conclude that the trial court exceeded its authority when it redesignated the attempted murder of John Doe into the assault with a semiautomatic firearm on John Doe *and* assault with a semiautomatic firearm on Jane Doe. Valenzuela was initially charged with *two* counts of attempted murder, one against John Doe and another against Jane Doe, and two counts of assault with a semiautomatic firearm, again one against John Doe and another against Jane Doe. But in exchange for his plea to a single count of attempted murder against John Doe, the attempted murder and assault against Jane Doe and the active gang participation counts were dismissed at the time of sentencing. Indeed, the district attorney did not even seek a waiver under *People v. Harvey* (1979) 25 Cal.3d 754 as to the dismissed counts, to permit their consideration in sentencing or restitution, or a criminal protective order as to Jane Doe. As here, where the attempted murder specified a single victim and counts as to other potential victims were dismissed, the trial court was authorized under section 1172.6, subdivision (e) to resentence Valenzuela to the "felony that was the predicate for relief in the first place—i.e., the offense or felony that supported the prosecution's theory of … murder under the natural and probable consequences doctrine." (*Arellano*, *supra*, 16 Cal.5th at p. 475; § 1172.6, subd. (a)(1).) In this case, the record tells us that the target

11

offense of the vacated attempted murder of John Doe would be the assault on John Doe, *not* the assault on Jane Doe. (*Lara*, *supra*, 108 Cal.App.5th at p. 1023.)

We recognize that a single offense of murder, attempted murder, or manslaughter may in some instances be the natural and probable consequence of *multiple* target offenses. (See *People v. Lewis* (2001) 25 Cal.4th 610, 654 [no requirement that jury unanimously agree on which target offense forms basis of first degree murder conviction]; *People v. Taylor* (2010) 48 Cal.4th 574, 626 [accord].) Likewise, "multiple felonies can and do form the basis for felony-murder liability in certain cases." (*Watson*, *supra*, 64 Cal.App.5th at p. 485.) We express no opinion on whether redesignation of a conviction obtained under different circumstances, such as by jury trial, may include multiple target offenses that, though not charged, were actually litigated at the homicide trial. But whether " 'underlying felony' is susceptible of either singular or plural meaning *depend[s] on context*." (*Watson*, at p. 485, italics added.) As *Arellano* has now instructed, the relevant context includes the prosecution's charging decision in the original settlements. (*Arellano*, *supra*, 16 Cal.5th at p. 475 [distinguishing a resentencing proceeding under § 1172.6 from "a new prosecution" of allegations that originally went "uncharged and unproven"]; *Lara*, *supra*, 108 Cal.App.5th at p. 1027 [§ 1172.6 refers to those felonies that " 'underlie' " the felony murder]; *Arellano*, at p. 470 [defining target offense and underlying felony].)[6]

As *Arellano* points out, the Legislature did not dictate any specific procedures for such a level of factfinding for uncharged enhancements. (*Arellano*, *supra*, 16 Cal.5th at p. 476.) The same holds true for uncharged convictions. Section 1172.6, subdivision (e)

---

[6] In *Watson*, the trial court redesignated the murder conviction as both a robbery and a burglary but stayed execution of the robbery sentence under section 654. (*Watson*, *supra*, 64 Cal.App.5th at p. 477.) Conceivably, it would often be the case that if multiple underlying felonies or target offenses underlie a vacated conviction, those felonies or target offenses may arise from the same "act or omission" under section 654.

12

does not describe how parties will receive notice of what charges will be proven at a resentencing proceeding and what burden or standard of proof even applies—suggesting an intent not to burden the trial courts with such decisions. (*Arellano*, at p. 476.)[7] And had the Legislature intended courts to have the flexibility to redesignate *multiple* target offenses or underlying felonies based on any conceivable theory—irrespective of the prosecution's charging and settlement decisions—it could have expressly said so. (See *id*. at pp. 470–471.)

Here, permitting the trial court to redesignate an assault with a semiautomatic firearm on a victim not contemplated in the original conviction would permit the prosecutor and court to "effectively revisit its charging decisions" and its own bargain with the defendant, as the prosecutor chose not to pursue these additional counts related to Jane Doe and instead agreed to dismiss them. (*Arellano*, *supra*, 16 Cal.5th at p. 476.) And as in *Lara*, Valenzuela's plea to attempted murder of one victim did not constitute an admission that he was guilty of assault against two victims. (*Lara*, *supra*, 108 Cal.App.5th at p. 1027.) There was no trial, and to resurrect an unproven and previously dismissed offense that is *not* the target offense would "resemble a new prosecution" that exceeds the resentencing proceeding contemplated by section 1172.6. (*Arellano*, at p. 475.)

For example, had the target offense or underlying felony been charged and Valenzuela resentenced under section 1172.6, subdivision (d)(3), the trial court would have been required to vacate the conviction as well as any allegations and enhancements attached to the conviction and then resentence the defendant on the remaining charges.

---

[7] Although the prosecution bears the burden of proving beyond a reasonable doubt at a section 1172.6 evidentiary hearing that the defendant remains guilty of murder, attempted murder, or manslaughter under current law (§ 1172.6, subd. (d)(3)), section 1172.6 is silent on what burden of proof is required for redesignated underlying felonies or target offenses. But courts have held that the burden of proving redesignated offenses lies with the People. (*Silva*, *supra*, 72 Cal.App.5th at pp. 526–527.)

The trial court under section 1172.6, subdivision (d)(3) would not have been otherwise entitled to resentence Valenzuela on "charges that *could have been* established by the evidence." (*Arellano*, *supra*, 16 Cal.5th at p. 470.)  It would be anomalous to restrict a trial court under section 1172.6, subdivision (d)(3) to abide by " 'what's already occurred in the case' " (*Arellano*, at p. 470) but then permit a trial court unfettered discretion under section 1172.6, subdivision (e) to essentially seek out and impose any other convictions so long as they are supported by the evidence.

Although *Watson* and *Silva* concluded that in enacting Senate Bill No. 1437, the Legislature intended to "afford[] defendants convicted of murder ' "fine judicial calibration" ' with respect to punishment" (*Watson*, *supra*, 64 Cal.App.5th at p. 492; *Silva*, *supra*, 72 Cal.App.5th at p. 532 [finding that § 1172.6 invests trial courts to resentence "a petitioner to an appropriate term of years based on his or her individual culpability"]), *Arellano* addressed this proportionality argument and rejected it, finding that the Legislature had *already* chosen to address the culpability of the individual by amending the felony-murder rule to eliminate imputed theories of malice.  (*Arellano*, *supra*, 16 Cal.5th at p. 476.)  The Legislature thus "expected the new legislation 'to limit convictions and subsequent sentencing' and 'assist[] in the reduction of prison overcrowding.' " (*Ibid.*)  It was to this end that the high court deemed it appropriate to limit the trial court in accordance with the People's "charging decisions" rather than permit the trial court to maximize a defendant's exposure on resentencing by transforming the resentencing proceeding into a new prosecution.  (*Id*. at p. 475.)

The Attorney General distinguishes Valenzuela's case from *Lara*, where there was no evidentiary hearing and the parties stipulated that the defendant was entitled to resentencing.  (*Lara*, *supra*, 108 Cal.App.5th at pp. 1023, 1027.)  To be sure, the trial court here held an evidentiary hearing on Valenzuela's petition during which John and Jane Doe, among other witnesses, testified about the circumstances of the shooting.  There was thus uncontradicted evidence that there were two victims in this case.  The

pertinent inquiry post-*Arellano*, however, is not whether sufficient evidence supports the trial court's maximalist redesignation of target offenses, but whether the redesignated offense had been the "predicate" that supported the prosecution's theory of conviction under former law. (*Arellano*, *supra*, 16 Cal.5th at p. 475.) *Lara* did not hold otherwise but merely noted that "even if we were to agree" with the Attorney General's interpretation of section 1172.6, subdivision (e), "the result would be the same" given the paucity of evidence before the trial court on resentencing. (*Lara*, at p. 1027.) As in *Lara*, the district attorney's dismissal of all counts involving Jane Doe and the gang participation count is dispositive. Although it is possible to conceive of an alternative scenario where, for example, the assault with a semiautomatic firearm on Jane Doe *was* the target offense of the attempted murder on John Doe,[8] we cannot agree that the Legislature would have intended to give courts such "unbounded" discretion to reevaluate Valenzuela's "culpability anew" by permitting the prosecutor to resurrect previously dismissed, otherwise unlitigated charges. (*Arellano*, at p. 476.)

We therefore conclude that the trial court erred by redesignating the attempted murder of John Doe as an assault with a semiautomatic firearm on Jane Doe and direct the trial court to vacate Valenzuela's sentence for that count.

## C.     *The Upper Term Sentence*

Valenzuela argues that the trial court erred by imposing an upper term for the count of assault with a semiautomatic firearm on John Doe without holding a jury trial as requested. The Attorney General concedes that Valenzuela was entitled to a jury trial on the aggravating factors found by the trial court, and we agree.

---

[8] A target offense involving one victim can result in a nontarget offense against other victims. (See *People v. Maciel* (2013) 57 Cal.4th 482, 519–520 [reasonably foreseeable that target offense of agreement to kill one victim resulted in murders of other victims who were present].)

Under section 1170, subdivision (b), when a statute "specifies three possible terms," the trial court "shall, in its sound discretion, order imposition of a sentence not to exceed the middle term" (*id*., subd. (b)(1)) unless circumstances in aggravation that justify an upper term sentence have "been stipulated to by the defendant or have been found true beyond a reasonable doubt at a trial by the jury or by the judge in a court trial." (*Id*., subd. (b)(2).) However, a trial court may "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id*., subd. (b)(3).)

After Valenzuela's resentencing, the California Supreme Court decided *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*). Relying on *Erlinger v. United States* (2024) 602 U.S. 821, our high court held that the Sixth Amendment requires a jury determination on aggravating factors related to a defendant's criminal history, such as whether a defendant's convictions were of " 'increasing seriousness' " under rule 4.421(b)(2), and whether the defendant's prior performance on probation was unsatisfactory under rule 4.421(b)(5). (*Wiley*, at p. 1082.) *Wiley* concluded that "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Id*. at p. 1086, fn. omitted; *Erlinger*, at p. 834 ["[v]irtually 'any fact' that 'increase[s] the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)"].)

As here, where a defendant was deprived of a jury trial on aggravating factors used at sentencing, we must apply the harmless beyond a reasonable doubt standard in *Chapman v. California* (1967) 386 U.S. 18. (*Wiley*, *supra*, 17 Cal.5th at p. 1087.) Under this standard, we must reverse the judgment unless we " 'conclude[] beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or

16

that those facts were otherwise proved true in compliance with the current statute.' " (*Ibid*.)

Applying this standard, reversal is required. At the resentencing hearing, the trial court relied on Valenzuela's rap sheet to determine that the crimes were of increasing seriousness and were numerous under rule 4.421(b)(2). According to Valenzuela's rap sheet, he had a juvenile adjudication in 2007 for possession of a knife at school (§ 626.10, subd. (a)), 2010 juvenile adjudications for battery with serious bodily injury (§ 243, subd. (d)) and grand theft from a person (§ 487, subd. (c)), and a 2014 conviction for carrying a loaded firearm in a public place. Based on these series of offenses, a rational jury "could have disagreed as to whether it demonstrated criminal conduct of increasing seriousness." (*Wiley*, *supra*, 17 Cal.5th at p. 1089.) Likewise, a rational jury could have also found that Valenzuela's prior convictions were not particularly numerous. (*People v. Wright* (2025) 113 Cal.App.5th 832, 848.)

Furthermore, we cannot conclude beyond a reasonable doubt that a jury would have found that Valenzuela was on probation at the time of the charged offenses. (Rule 4.421(b)(4).) The only exhibit considered by the trial court at sentencing was Valenzuela's rap sheet, which showed that he was sentenced to "[three] years probation, [six] months jail" in August 2014. Yet the instant offenses were committed in April 2018—which would presumably have been *after* the expiration of a three-year term of probation.

Accordingly, the failure to submit these aggravating factors to the jury was not harmless beyond a reasonable doubt, and Valenzuela is entitled to reversal of the upper term sentence.

### III.    DISPOSITION

The judgment is reversed.

17

_____

LIE, Acting P. J.

WE CONCUR:


_____

WILSON, J.



_____

CHUNG, J.*


*People v. Valenzuela*
H053233
_____

*Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.